

*Ilana Haramati*
*Partner*
Direct (646) 860-3130
Fax (212) 655-3535
ih@msf-law.com

June 6, 2023

**VIA ECF**

Hon. Nicholas G. Garaufis
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Courtroom 4D South
Brooklyn, NY 11201

     **Re:**    ***United States v. Jacob Daskal*, 21-cr-110 (NGG)**

Dear Judge Garaufis:

We represent defendant Jacob Daskal in the above-referenced matter. We write in further support of Mr. Daskal's May 23, 2023 motion for a foreign deposition of Rivka Finkel pursuant to Federal Rule of Criminal Procedure 15, *see* ECF Doc. 82 ("Mot."), and in response to the government's May 31, 2023 opposition. *See* ECF Doc. 85 ("Opp."). We further write to request that a Court schedule a pretrial conference to address this motion, and other outstanding pretrial issues.

A Rule 15 foreign deposition is required here as Ms. Finkel is unavailable to testify at Mr. Daskal's upcoming trial. She lives in Jerusalem, Israel, beyond the federal court's jurisdiction, and will not voluntarily travel to the United States to testify. Ms. Finkel has two disabled children, ages 12 and 13, who require 24-hour care, and an eight-year-old child at home. Traveling requires her to leave her disabled children and hire expensive 24-hour childcare for the duration of her trip. She will not voluntarily do so, and Mr. Daskal has no means of compelling her attendance at trial. Even offering to pay for her substantial travel expenses will not persuade her to make the trip to Brooklyn. That is the very definition of unavailability. Ms. Finkel has indicated, however, that she will voluntarily make herself available for a foreign deposition in Israel, provided that she has some notice to accommodate her schedule.

A Rule 15 foreign deposition is necessary to protect Mr. Daskal's right to a fair trial in the fight of his life. *See Taylor v. Illinois*, 484 U.S. 400, 408 (1988) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense;" "[a]t a minimum, the Sixth Amendment encompasses the right of "criminal defendants . . . to put before a jury evidence that might influence the determination of guilt.") (quotation marks and citations omitted). Ms. Finkel's testimony addresses the very core of the government's case against Mr. Daskal—the reliability of the complaining witness' account of sexual encounters with Mr. Daskal. She is an absolutely

Hon. Nicholas G. Garaufis
June 6, 2023
Page 2 of 9

---

crucial witness for Mr. Daskal's defense.  The Court should grant the motion for a Rule 15 foreign deposition to ensure that Ms. Finkel's pivotal testimony is available for the jury's consideration.

## I.       Rivka Finkel is Unavailable

Ms. Finkel will not voluntarily travel to New York to testify; she is unavailable.  As detailed in Mr. Daskal's moving papers, Ms. Finkel has no current plans to travel to the United States.  She declines to do so based on the inconvenience to her family, and expense of travel from her home in Jerusalem, Israel to New York.  Beyond the costs of flights and accommodations, Ms. Finkel's travel would require her to incur the cost and difficulty of arranging care for her two disabled children.  Ms. Finkel has 12 children, two of whom (ages 12 and 13) have Downs Syndrome, and require 24-hour care.  She is their primary caregiver.  Ms. Finkel also has an eight year old child at home who likewise requires parental care and supervision.  Whenever Ms. Finkel travels, she has to make advanced arrangements to hire a caregiver to move into her home and care for her disabled children while she is away.  That is both logistically challenging and costly.  Ms. Finkel will not voluntarily travel to the United States and bear the expense and difficulty of arranging childcare, even if Mr. Daskal were to pay for her travel expenses.  And, of course, Mr. Daskal has no means of compelling her presence, rendering Ms. Finkel unavailable under Rule 15.  *See United States v. Alexandre*, No. 22-CR-326 (JPC), 2022 WL 9843495, at *3 (S.D.N.Y. Oct. 17, 2022) (granting motion for Rule 15 deposition where foreign company confirmed "that it will not voluntarily make a witness available to testify at trial"); *United States v. Wey*, No. 15-CR-611 (AJN), 2017 WL 237651, at *25 (S.D.N.Y. Jan. 18, 2017) (granting motion for Rule 15 deposition: "Defense counsel represents that it has spoken with counsel for [the witness] in a good faith attempt to secure [the witness'] testimony at Mr. Wey's trial and has been informed that [the witness] does not intend to travel to the United States to testify.") (quotation marks and modifications omitted).

Nor can Mr. Daskal be required to offer to pay her substantial travel and childcare expenses in order to secure her availability.[1]  Beyond the cost to Mr. Daskal, an all-expenses paid trip to

---

[1] The government's cases do not hold otherwise.  *See* Opp at 3.  *United States v. Bronston*, 321 F. Supp. 1269, 1273 (S.D.N.Y. 1971), granted the defendant's Rule 15 deposition motion, although noting that a witness' unwillingness to travel "unless his expenses are paid," alone may not constitute unavailability.  *United States v. Stein*, 482 F. Supp. 2d 360, 365 (S.D.N.Y. 2007), makes no mention of requiring the movant to offer to pay travel expenses.  In *United States v. Oudovenko*, No. 00-CR-1014, 2001 WL 253027, at *3 (E.D.N.Y. Mar. 7, 2001), while the court mentioned that the movant did not offer to pay the witnesses' travel expenses, ultimately, the court denied the Rule 15 motions because the court was incredulous of the witnesses' unavailability as the defendant was "seeking to depose persons with whom he has had a close working relationship, in some instances for many years, not independent third-parties who would have no reason to travel to the United States to testify at his trial.  Moreover, the government ha[d] offered to assist in obtaining visas for these witnesses to facilitate their presence at trial."  *Id.* at *3.  Ms. Finkel is precisely such an "independent third-part[y] who would have no reason to travel to the United States to testify;" she has no reason to leave her children, and travel 6,000 miles from her home to testify.

New York City, including the substantial cost of childcare for her two disabled children, would create the appearance of bias for a critical defense witness, and manufacture fodder for cross-examination, undermining Mr. Daskal's right to a fair trial. *See United States v. Johnpoll*, 739 F.2d 702, 709–10 (2d Cir. 1984) (Swiss witness unavailable who demanded significant payment from the government beyond statutorily-authorized witness fees, and basic travel expenses, as "[i]f [the movant] were required to yield to such demands [from the witnesses for payment] before being permitted to avail itself of Rule 15, it might then be forced in the future to submit to potentially unlimited pressure from foreign witnesses (requesting much higher levels of compensation), which might justify criticism that their testimony was being 'bought.'"); *see also United States v. Dunseath*, No. 98-CR-493 (JGK), 1999 WL 165703, at *1 (S.D.N.Y. Mar. 25, 1999) (citing Second Circuit's *Johnpoll* decision as holding "that witnesses were 'unavailable' and exceptional circumstances existed when witnesses refused to attend trial unless they and their counsel were paid for their time and expenses.").

The touchstone for Rule 15 "unavailability" is "determined according to the practical standard of whether under the circumstances the [movant] has made a good-faith effort to produce the person to testify at trial." *Johnpoll*, 739 F.2d at 709 ("the lengths to which the [movant] must go to produce a witness before it may offer evidence of an extra-judicial declaration is a question of reasonableness.") (quotation marks, citations and modifications omitted). By remaining in contact with Ms. Finkel for a period of years since Mr. Daskal's state arrest in 2018, and attempting to secure her voluntary appearance well in advance of the trial date, Mr. Daskal has made a "good-faith effort" to produce her to testify at trial. Because she lives in Israel, is willing to be voluntarily deposed there, and Mr. Daskal cannot compel her personal appearance in Brooklyn, she is unavailable. A Rule 15 foreign deposition is required.

## II.   Rivka Finkel's Testimony is Material

The government claims that Ms. Finkel's testimony is not "material" for Rule 15 purposes arguing that it will be inadmissible as a prior inconsistent statement of the complaining witness ("CW"). *See* Opp. at 4. The government is wrong on two counts.

First, the testimony is easily admissible under Federal Rule of Evidence 613(b). It is inconsistent with the central claims of the CW's expected testimony: that she had sexual encounters with Mr. Daskal. Whether the CW denies or explains her earlier recantations at trial is immaterial to the admissibility of Ms. Finkel's testimony—either way, it will be inconsistent with the essential claims of the government's case. And the context and content of the prior inconsistent statements in Ms. Finkel's expected testimony will likely be different than any explanations and justifications the CW propounds.

Perhaps more important for the instant motion, however, Rule 15 materiality does not require admissibility. Because of the vagaries of trial, particularly the contingent nature of any evidence that the defense may seek to introduce, it would be impractical to insist on admissibility of testimony taken prior to trial. Indeed, the only way to be certain that deposition testimony will be admissible is to wait to conduct the deposition until after the government's case in chief, when Mr. Daskal will know precisely what allegations and statements are in evidence against him. That

Hon. Nicholas G. Garaufis
June 6, 2023
Page 4 of 9

---

is impractical, inefficient, and not what Rule 15 requires.  Because there is a good faith basis to believe that Ms. Finkel's material testimony will be admissible, a Rule 15 foreign deposition is warranted here.

### A.     Rivka Finkel's Anticipated Testimony

As summarized in Mr. Daskal's moving papers, Ms. Finkel is the principal of the Olamot School in Jerusalem, Israel, which the CW attended from December 2017 through March 2018. That period was after the alleged sexual encounters in 2017, and just before the CW's complaint to the NYPD on May 9, 2018.  *See* Mot. at 2-3.  The CW and Mr. Daskal allegedly communicated by phone and text while the CW was enrolled at Olamot, and we expect that the government will seek to introduce those communications.

Ms. Finkel's anticipated testimony includes several relevant facts pivotal to Mr. Daskal's defense:

- The CW disavowed her sexual allegations against Mr. Daskal.

- The CW's statements that she was powerful, and could force adults and authority figures to do what she wants.

- The CW's statements that she used the threat of allegations as a tool to extract concessions from Daskal.

- The context of the alleged conversations between the CW and Mr. Daskal at the time, including that the CW usually initiated the conversations.

- The CW's apparent infatuation with Mr. Daskal at the time, including her constant conversation regarding Mr. Daskal with other students at Ms. Finkel's school.

### B.     Rule 15 Materiality Does Not Require Admissibility

The government argues that Ms. Finkel's anticipated testimony is not "material" under Rule 15 because, according to the government, it will be inadmissible at trial.  *See* Opp. at 4. Crucially, however, admissibility is not a threshold requirement for a Rule 15 foreign deposition. *See United States v. Mohamed*, No. 18-CR-603 (ARR), 2020 WL 1545522, at *2, *6 (E.D.N.Y. Apr. 1, 2020) (granting Rule 15 motion to preserve witnesses' testimony as "[a]dmissibility of the deposition testimony is not a factor in deciding a Rule 15 motion."); *United States v. Connolly*, No. 16-CR-370 (CM), 2018 WL 2411217, at *3 (S.D.N.Y. May 15, 2018) (granting motion for foreign deposition, inviting challenges to the testimony's admissibility thereafter, explaining that the defendant's admissibility arguments were premature: "The short answer to this argument is that defendants are free to cross-examine Ms. Scutt to their hearts' content at her deposition, and

Hon. Nicholas G. Garaufis
June 6, 2023
Page 5 of 9

then to argue that, for some reason or other, her testimony should not be admitted."); *see also* Mot. at 4-5 (citing cases).[2]

Indeed, Rule 15 expressly contemplates that admissibility of any deposition testimony is a separate, later determination for the Court following a deposition; it is not a prerequisite for a Rule 15 deposition.  *See* Fed. R. Crim. P. 15(f) ("Admissibility and Use as Evidence. An order authorizing a deposition to be taken under this rule does not determine its admissibility. A party may use all or part of a deposition as provided by the Federal Rules of Evidence.").  Because Ms. Finkel's testimony is relevant to an important factual question for trial, materiality is satisfied.

> **C.      Although Rule 15 Does Not Require a Showing of Admissibility, Rivka Finkel's Expected Testimony is Admissible Under FRE 613**

While not strictly required to obtain a Rule 15 deposition, Ms. Finkel's expected testimony will also be admissible under Federal Rule of Evidence 613(b) as it undermines the CW's allegations against Mr. Daskal that are the crux of the government's case.

The government argues that Ms. Finkel's testimony, centering around the CW's denials of a sexual relationship with Mr. Daskal, and statements that she could use the threat of such allegations as a cudgel against Mr. Daskal are inadmissible because:

> [T]he government has disclosed to defense counsel that the victim told law enforcement officers that she previously made statements to individuals denying her sexual relationship with the defendant. The government intends to elicit this information in its case-in-chief and defense counsel will have ample opportunity to cross-examine the victim on this subject, including with the material that the government has provided to the defendant on this subject. Thus, under Rule 613(b), defense counsel would not be permitted to call Ms. Finkel to testify unless and until the victim denies making the prior statements.

Opp. at 4.  In other words, the government asserts that Ms. Finkel's testimony is inadmissible because: (1) Mr. Daskal can cross-examine the CW regarding her prior statements to Ms. Finkel (among others); and (2) the government expects that the CW will not deny making the allegations, but will instead testify that the denials were false and provide justification for them.  Such testimony from the CW would not preclude Ms. Finkle's testimony; under FRE 613(b) it remains admissible.

---

[2] The government's cases similarly do not require proof of admissibility of testimony to permit a Rule 15 deposition.  *See* Opp. at 3-4.  *United States v. Allen*, No. 14-CR-272, 2015 WL 5022524, at *3 (S.D.N.Y. Aug. 18, 2015), denied a Rule 15 deposition where "[n]o part of [the] testimony would remotely bear on" the material issues at trial.  *Id.* at *3.  *United States v. Campbell*, No. CR 91-1219 (RJD), 1998 WL 564376, at *1 (E.D.N.Y. June 30, 1998), only denied a Rule 15 motion for ***additional*** foreign depositions after a first set of depositions had already been taken in the case. !

Federal Rule of Evidence 613(b) provides: "Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." Fed. R. Evid. 613(b).  In other words, "[a] witness's prior statement may be offered to impeach that witness's credibility if (1) the statement is inconsistent with the witness's trial testimony, (2) the witness is afforded an opportunity to deny or explain the same, and (3) the opposing party is afforded the opportunity to examine the witness thereon."  *United States v. Amato*, No. 03-CR-1382 (NGG), 2006 WL 1891113, at *3 (E.D.N.Y. June 27, 2006) (quotation marks, citations, and modifications omitted).  Those criteria are easily satisfied here.

### 1.    *Ms. Finkel's Expected Testimony is Inconsistent with the CW's*

Ms. Finkel's testimony is plainly inconsistent with the CW's allegations against Mr. Daskal.  Under Second Circuit precedent, "[i]t is well settled that for two statements to be inconsistent, they need not be diametrically opposed," instead, "statements are inconsistent if there is ***any variance*** between the statement and the testimony that has a reasonable bearing on credibility."  *United States v. Trzaska*, 111 F.3d 1019, 1024–25 (2d Cir. 1997) (emphasis added, citations and modifications omitted) (citing John W. Strong et al., 1 McCormick on Evidence § 34, at 115 (4th ed. 1992) ("[T]he test should be, could the jury reasonably find that a witness who believed the truth of the facts testified to would have been unlikely to make a ... statement of this tenor?"); *see also United States v. Stewart*, 907 F.3d 677, 687 (2d Cir. 2018) ("explanations and denials run the gamut of human ingenuity, ranging from a flat denial, to an admitted excuse, to a slant, to a disputed explanation, or to a convincing explanation a statement could fall at any point on this spectrum and still be inconsistent.")  (quotation marks and citations omitted).

Ms. Finkel is expected to testify regarding the CW's recantation of her allegations, and how the CW explained that she could use the threat of allegations against Mr. Daskal as an ultimatum.  This "admitted excuse" or "slant" is inconsistent with the CW's likely testimony regarding alleged sexual encounters she had with Mr. Daskal.  *See Stewart*, 907 F.3d at 687.  Importantly, the CW's credibility on this only disputed issue is the very essence of the government's case.  Even should the CW admit denying sexual encounters to Ms. Finkel and offer an excuse for them, Ms. Finkel's testimony regarding the frequency, content, context, and demeanor of the CW's recantations and professed ultimatums to Mr. Daskal will "still be inconsistent" with the CW's testimony.  That is enough for admission under Rule 613(b).  Because the "variance" between Ms. Finkel's testimony regarding the CW's statements in 2017 and 2018, and the CW's expected trial testimony (as proffered by the government) will have "a reasonable bearing" on the CW's credibility, the testimony is inconsistent for purposes of FRE 613.  *Trzaska*, 111 F.3d at 1024–25.

Hon. Nicholas G. Garaufis
June 6, 2023
Page 7 of 9

---

        **2.**      *Admissibility is Not Dependent on the CW Denying the Statements*

      The government is flatly incorrect that Ms. Finkel's testimony will be inadmissible "unless and until the victim denies making the prior statements." Opp. at 4.[3] Rule 613(b) requires only confrontation of the CW regarding the inconsistent statements, and an opportunity for the government to examine the CW regarding the inconsistencies. *Amato*, No. 03-CR-1382 (NGG), 2006 WL 1891113, at \*7 (admitting extrinsic evidence of prior inconsistent statements: "I find that the prior inconsistent statements sought by [defendant] are admissible pursuant to Rules 611(a) and 613(b), because they are inconsistent, [the witness] was afforded the opportunity to deny or explain them, and Basile's counsel provided the Government and this court with sufficient notice that she intended to seek to admit the statements."). There will be ample opportunity for the government to question the CW about the statements; nothing more is required.

      The Second Circuit has explained, contrary to the government's argument, that "[e]xtrinsic evidence of a prior inconsistent statement is more persuasive to a jury than a witness's acknowledgement of inconsistencies in a prior statement." *United States v. Strother*, 49 F.3d 869, 876 (2d Cir. 1995) (vacating convictions based on exclusion of extrinsic evidence of prior inconsistent statements). Courts in this Circuit have thus admitted extrinsic evidence of prior inconsistent statements when the witness has not denied making the statement. *See United States v. Williams*, No. 11-CR-663 AT, 2014 WL 4651968, at \*8–9 (S.D.N.Y. Sept. 15, 2014), *aff'd United States v. Williams*, 756 F. App'x 73, 74–75 (2d Cir. 2019) (extrinsic evidence of prior inconsistent statement admitted based on *Strother* where witness admitted making prior inconsistent statement); *United States v. Sosa-Zarzuela*, No. 21-CR-41 (PAC), 2022 WL 16859736, at \*1 (S.D.N.Y. Nov. 10, 2022) (admitting extrinsic evidence of prior inconsistent statement, suggesting in the opinion that the court was doing so although the witness had admitted to the prior statement); *see also Stewart*, 907 F.3d at 687 (vacating conviction based on exclusion of extrinsic evidence of a hearsay declarant's inconsistent statement under FRE 806, explaining that the declarant "***need not have explicitly denied the . . . statement to render [extrinsic evidence of a prior inconsistent statement] admissible***. Although [the declarant] has consistently acknowledged that some exchange took place . . ., the precise contents and the import of those discussions have not been similarly uniform. To render the statements inconsistent . . . it was enough that [prior statement] varied from his earlier recitation of the . . . statement in a manner such that they cast a different meaning") (emphasis added).

        **3.**      *Courts in Sister Districts Admitted Similar Testimony Under FRE 613*

      In circumstances like this one—where Ms. Finkel's testimony undermines the veracity of the CW's account, the central issue of the case, and disputes the CW's explanation—other district

---

[3] Even were the government correct (it is not) that Ms. Finkel's testimony would not be admissible "unless and until" the CW denied making the prior inconsistent statements, a Rule 15 foreign deposition would still be required at this stage. It would be impractical, disruptive, and immensely inefficient for the Court and the empaneled jury to pause the trial should the CW deny her prior inconsistent statements, which even the government concedes would render Ms. Finkel's testimony admissible.

Hon. Nicholas G. Garaufis
June 6, 2023
Page 8 of 9

courts have admitted similar testimony under FRE 613(b).  In *United States v. Edwards*, No. CR 16-3068 JB, 2017 WL 4857441 (D.N.M. Oct. 25, 2017), a rape case that also involved a single alleged victim, the defense sought to call a witness who was expected to testify that the victim stated about the defendant: "Oh, if I ever want to get even with him, I'll just call rape."  *Id*. at *2. *Edwards* admitted the testimony under FRE 613, provided that the victim was questioned about it, per the rule.  Admissibility was not contingent upon the victim's denial of the prior statement. *Edwards* explained:

> [T]he probative value of the prior inconsistent statement—that she can "call rape" when she does not get what she wants—is greater than unfair prejudice. While it is unlikely that V.S. will admit that she made the statement, it would be explosive evidence if she admitted she had said it once. This statement goes to the very core of the issues of the case, and V.S.'s credibility is one of the central issues.

*Id*. at *18.  The same is true here.  Ms. Finkel's expected testimony that the CW recanted her allegations, and described her ability to threaten Mr. Daskal with allegations as an ultimatum, as well as Ms. Finkel's description of the CW's demeanor and the context for those statements "goes to the very core of the issues of the case," which rest almost entirely on the CW's credibility regarding her allegations against Mr. Daskal.  *Id.*

The testimony regarding the CW's consistent outreach to Mr. Daskal, and frequent discussions about Mr. Daskal while she attended Ms. Finkel's school are similarly admissible.  It provides context for the communications between the CW and Mr. Daskal's phone during this timeframe that we expect the government will introduce at trial.  *See, e.g., United States v. Barone*, 913 F.2d 46, 49 (2d Cir.1990) (otherwise inadmissible recorded out of court statements properly admitted not for the truth of the matter asserted, but to establish a context to assist the jury with understanding the defendant's recorded statements); *United States v. Torres*, 435 F. Supp. 3d 526, 533 (S.D.N.Y. 2020) (out of court statements admissible "merely to provide context or render other [admissible] statements intelligible, in which case they would not be admitted for truth, and thus not hearsay.").

### III.   Ms. Finkel has Confirmed her Willingness to Voluntarily Participate in a Foreign Deposition in Her Home Country of Israel

The government outlines a procedure that it learned from the Office of Internal Affairs ("OIA") for taking a foreign deposition in Israel of a witness who consents to appear voluntarily. *See* Opp. at 6.  Counsel for Mr. Daskal confirmed with Ms. Finkel that although she will not voluntarily travel to the United States, she consents to appear voluntarily for a foreign deposition in her home country of Israel, provided she has some advanced notice to arrange her schedule.

Accordingly, should the Court grant Mr. Daskal's Rule 15 foreign deposition motion, he consents to the OIA procedure the government outlined, and will arrange the logistics of the foreign deposition, including that: Ms. Finkel will testify under oath; at an agreed-upon location, the witness' testimony will be video and audio recorded, as well as transcribed; and that the government will have an opportunity to observe the questioning and cross-examine Ms. Finkel.

Hon. Nicholas G. Garaufis
June 6, 2023
Page 9 of 9

Of course, Mr. Daskal anticipates that, should the Court deem it appropriate to do so, the Court may preside over any deposition, as it would during trial testimony. *See* Opp. at 5.

Accordingly, we respectfully request that the Court order a foreign deposition of Rivka Finkel in accordance with Federal Rule of Criminal Procedure 15(a)(1), and pursuant to the OIA procedures confirmed by the government.

Respectfully submitted,

_____/s/ IH_____
Henry E. Mazurek
Ilana Haramati

*Counsel for Defendant Jacob Daskal*

cc:     Counsel of Record (*via ECF*)