

*Ilana Haramati*
*Partner*
Direct (646) 860-3130
Fax (212) 655-3535
ih@msf-law.com

June 23, 2023

**VIA ECF**

Hon. Nicholas G. Garaufis
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Courtroom 4D South
Brooklyn, NY 11201

      Re:    *United States v. Jacob Daskal*, 21-cr-110 (NGG)

Dear Judge Garaufis:

      We represent defendant Jacob Daskal in the above-referenced matter. We write in further support of our motion for the Court to order a Rule 15 deposition of Ms. Rivka Finkel, at which counsel for the parties depose her in-person in Israel. As stated previously on the record, we believe this is the only way to protect adequately Mr. Daskal's constitutional rights of due process, to confront witnesses, and to the effective assistance of counsel. There is no legal authority in the Federal Rules of Criminal Procedure, or elsewhere, to support the examination of Ms. Finkel under Rule 15 by virtual or remote appearances of counsel from the United States.

**A.**    **Testimony During Trial Via Live Video Conference Risks Prejudicing Mr. Daskal**

      Mr. Daskal continues to object to the admission of out-of-court testimony by Rivka Finkel through contemporaneous video conferencing technology ("VCT") during the live trial. Of course, Ms. Finkel's in-person appearance at trial would normally be required, but because she is unavailable to travel to the United States and resides outside the Court's jurisdiction, to preserve Ms. Finkel's testimony for trial, Rule 15 provides the only authorized procedures for admission of foreign deposition testimony. *See* Fed. R. Crim. P. 15(a)(1) ("A party may move that a prospective witness be deposed in order to preserve testimony for trial."). Contemporaneous videoconferencing at trial does not achieve the same objectives as a Rule 15 deposition, nor does it protect Mr. Daskal's Confrontation Clause rights and his right to effective counsel.

      Specifically, live videoconferencing technology is vulnerable to technical problems and interruptions that risk compromising the flow and persuasive value of Ms. Finkel's testimony for the jury. The same is not true of video recorded deposition testimony taken in-person. Although video conferencing technology has vastly improved in recent years, technical glitches and interruptions in connections are common. These include, for example, that the video could cut out, the connection could be slow, the video could require refreshing resulting in a delay between counsel's questioning and the witness' answers, the video and audio could be out of sync, the video

Hon. Nicholas G. Garaufis
June 23, 2023
Page 2 of 4

---

could be blurry, or the camera angle does not allow the jury to evaluate witness demeanor or appearance, among other reasonably common problems. And because counsel and Court personnel will be in Brooklyn while the witness is in Israel, neither the parties nor the Court will be able to reliably remedy any technical issues that may arise. Moreover, defense counsel will have very little opportunity to help coordinate her appearance in Israel at the specific time and place when she is to be called at trial, not to mention the difficulties of a seven-hour time zone difference. Indeed, it is precisely due to such problems that Judge Vitaliano precluded VCT presentation of a defense witness's testimony during trial in *United States v. Kershner, et al.*, No. 13-cr-00452 (ENV).[1]

The cases cited by the government do not support the use of contemporaneous videoconferencing technology under the circumstances presented here. Three of the cases were tried during the height of the Covid-19 pandemic in 2020 and 2021. In *United States v. Shipp*, No. 19-cr-29 (RPK), the court permitted a government witness to testify during the November 2020 trial via videoconference, while the witness was physically present in another room of the E.D.N.Y. Brooklyn courthouse, so her environment was the same as any open-court testimony. Because Covid-19 was raging, and vaccines were not readily available, the Court allowed the witness, who was pregnant, to testify via video from another courtroom to minimize her exposure to the virus from others present in the jury courtroom. Notably, the defendant in *Shipp* **consented** to the witness' testimony in this manner. In both *United States v. Zhukov*, No. 18-cr-633 (ERK), and *United States v. Won*, No. 18-cr-184 (RJD), foreign witnesses were permitted to testify by video during the 2021 trials in those cases, at a time when many foreign nationals were not permitted to enter the United States (and vice versa) due to the ongoing pandemic emergency. Finally, in *United States v. Petrossi*, No. 16-cr-234 (BMC), ECF Doc. 235, the defense—not the government—requested the witness' testimony via video conferencing. The defendant in *Petrossi* thus plainly waived any constitutional objections requiring in-person testimony.[2]

---

[1] Another problem with contemporaneous video transmission is that the parties cannot control the environment in which the witness is testifying. For example, who will monitor whether others are in the room during her testimony; could she have access to materials outside the camera's view that might prompt her responses; does she have the ability to adjust the settings of the camera and audio feed (to pause or mute the transmission). These are just a few of the ways that her live testimony might be corrupted by live video feed, which could be avoided or controlled if counsel were in the same room with the witness at the time she is examined.

[2] Nor does *United States v. Gigante*, 166 F.3d 75 (2d Cir. 1999), control here. In *Gigante* the Second Circuit only found that a witness' video testimony did not violate the defendant's Confrontation Clause rights because the witness "was in the final stages of an inoperable, fatal cancer, and was under medical supervision at an undisclosed location." *Id.* at 79. The Second Circuit emphasized, however, that "the use of remote, closed-circuit television testimony must be carefully circumscribed." *Id.* at 80. Nothing in the Second Circuit's opinion presented testimony via videoconferencing as an alternative to the procedures authorized under Rule 15. Notably, in

Because Ms. Finkel is unavailable to appear at trial, Mr. Daskal is already at a disadvantage as he will need to present her important testimony via video recording rather than in-person in open court. Only a foreign deposition (as authorized by Rule 15), at which counsel for the parties confront Ms. Finkel in the same room at the same time and place, can reliably preserve Mr. Daskal's fundamental Constitutional right to present and confront witnesses in his defense. It is only under these conditions that counsel can adequately observe and react to Ms. Finkel's demeanor and responses, control the environment in which she testifies, and confront her in the way the Constitution requires, *i.e.,* in actual reality, not a virtual one.

**B.     The Witness is Available for a Deposition Prior to Trial**

Ms. Finkel has confirmed her availability for a Rule 15 foreign deposition to be video-recorded in Israel on June 29, July 3, July 6, July 10, and July 11. She is generally available on Mondays, Tuesdays, and Thursday in the summer months.

Although the deposition would occur shortly prior to trial, that is not a basis for precluding an in-person deposition. In *United States v. Connolly*, No. 16-cr-370 (CM), 2018 WL 2411217, at (S.D.N.Y. May 15, 2018), the Court granted the motion for a Rule 15 deposition to occur in the United Kingdom in person approximately one month before trial. The court in *Connolly* explained that "there is no question that the [Rule 15 deposition] motion comes very late indeed" but that "taking the deposition might allow the Government to plug what defendants have long identified as a gaping hole in its case." *Id.* at *1-2; *accord United States v. Epskamp*, No. 12 CR. 120 (RJS), 2013 WL 12175097, at *2 (S.D.N.Y. Oct. 3, 2013) (granting motion for Rule 15 deposition where parties would travel to Germany requested just weeks before trial). The Court should similarly permit counsel for the parties to appear in-person at Ms. Finkel's Rule 15 deposition in Israel, despite the short time before the scheduled trial date.

Finally, with respect to the trial date, to the extent the Court finds, as we urge, that an in-person deposition is required by Rule 15, and it is impractical to coordinate such a deposition before the current scheduled trial date of July 17, 2023, defense counsel would consent to adjourning the trial to the Fall of 2023. We presently have a multi-defendant murder trial set before Judge Amon in this district for September 11, 2023, in *United States v. Yu, et al.*, 22-cr-208 (CBA) (E.D.N.Y.). And, while Ms. Haramati presently has an October 16, 2023 trial set in *United Sates v. Castellazzo, et al.*, No. 21-cr-466 (HG), there is a high likelihood that this case will result in a plea disposition in the coming weeks.[3] Thus, defense counsel expects to be available for an early-November 2023 trial date, and Mr. Daskal is prepared to exclude time under the Speedy Trial Act to accommodate this less harried scheduling of the Rule 15 deposition of his significant

---

*Gigante*, a Rule 15 deposition of the witness had previously been scheduled, and the defendant failed to appear at the deposition.

[3] Mr. Mazurek is not counsel for Mr. Castellazzo and would be available after his scheduled trial in *United States v. Yu*.

witness, Ms. Finkel. Indeed, this may be the most logical and efficient way to prepare for and proceed to trial, avoiding issues of constitutional magnitude.

                                                        Respectfully submitted,

                                                            /s/ IH
                                                  Henry E. Mazurek
                                                  Ilana Haramati

                                                  *Counsel for Defendant Jacob Daskal*

cc: Government Counsel (by ECF)