

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EMR/GN
F. #2018R02232

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 30, 2023

By E-Mail and ECF

The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:  United States v. Jacob Daskal
>      Criminal Docket No. 21-110 (NGG)

Dear Judge Garaufis:

The government respectfully submits this letter in response to the defendant Jacob Daskal's motions in limine filed on June 20, 2023. ECF No 101 ("Def. Mot."). The defendant moves: (i) to preclude statements of the victim of the charged crimes (the "Victim") in a controlled call and in text messages that she exchanged with the defendant; and (ii) to preclude the government from using the terms "victim" and "minor victim" to refer to the Victim at trial. As an initial matter, the government does not currently intend to present any evidence from the controlled call between the Victim and the defendant during its case-in-chief.[1]  With respect to the text messages between the Victim and the defendant, for the reasons set forth below, the Court should deny the defendant's motion and admit the Victim's statements in those messages. In addition, the Court should deny the defendant's motion to preclude the government from using the terms "victim" and "minor victim."

Finally, as set forth below, the government respectfully moves the Court to admit certain additional statements of the Victim, which are contained in text messages that she sent to a third party and are admissible as prior consistent statements.

---

[1] If the defendant testifies at trial and such testimony is inconsistent with his statements on the controlled call, however, the government reserves the right to cross examine the defendant regarding his prior statements on the call as they properly constitute impeachment evidence.

I.    The Court Should Admit the Victim's Text Messages From January and February 2018

The defendant has moved to preclude statements of the Victim in messages that she exchanged with the defendant in January and February 2018 on the basis that they are inadmissible hearsay.  He is incorrect.

As detailed in the government's June 20, 2023 in limine motion, the government expects to prove that the defendant and the Victim had a sexual relationship in the summer and fall of 2017, while the Victim was underaged.  See ECF No. 99, at 2-6.  The government also expects to prove that during their relationship, the defendant groomed the Victim by, among other things, frequently communicating with her through texts and calls and telling her that he loved her.  Id.   These communications continued throughout the winter and spring of 2018. The government also expects to prove that the defendant tried to conceal his illicit relationship with the Victim from others by having the Victim delete messages between them, and asking her to write letters denying that their relationship was wrong.  Id.  There can be no dispute that all of the above is direct evidence of the charged crimes and necessary to provide the jury with the appropriate background and context to understand the evidence in this case.

Some of the evidence the government expects to use as direct evidence of the charged crimes are WhatsApp and text messages between the defendant and the Victim, which were recovered off of the defendant's iPhone after his arrest.  These communications, which occurred between December 2017 and February 2018, undeniably prove the extent and nature of the sexual relationship that existed between the defendant and the Victim because the communications reference prior sexual conduct between the defendant and the Victim and the defendant's efforts to groom the Victim and conceal his relationship with her.  For example, a recovered WhatsApp conversation, which is attached here as Exhibit A, includes the following messages sent on or about February 1, 2018:[2]

> [Victim][3]:    Basically . . . I was really nervous last night cause the girls were discussing what they did with their boyfriends . . .

---

[2] The types of statements outlined herein are representative of the statements that the government intends to introduce at trial as direct evidence; it is by no means exhaustive, and the government reserves the right to introduce as evidence statements of a similar nature that are not outlined here.

[3] Because the defendant had attempted to delete these messages from his phone, the majority of the messages do not indicate who was the sender and who was the recipient. However, as the defendant acknowledges and as the government intends to prove, the content of the messages make clear who sent and received them.  As a result, it is crucial that the Court admit both sides of the conversation so that the jury can determine who the sender and recipient is of each message.

[Victim]:       And one girl said that she once did a blow job and he came . . . and she wanted to lick it . . . and he started screaming that she shouldn't cause of u swallow it then if u take a blood test later on it shows that u have his DNA in u . . . all girls agreed . . . so I was really nervous.  Because I did swallow u once . . . so please tell me honest truth . . . if I ever take a blood test will they blood able to see that I swallowed u?

[Daskal]:       No lol

[Daskal]:       It goes out of ur system

[Daskal]:       Only if you go inside and right away

[Daskal]:       After awhile even inside it's away unless ur pregnant

[Victim]:       But then when I'll b pregnant . . . . will they then see?

[Daskal]:       Nooooo

[Daskal]:       It does not stay anything

[Victim]:       Goood

[??]:           Lol

[Daskal]:       Don't worry

[Daskal]:       U know what my last name is

[Daskal]:       Mr careful

[Daskal]:       If it's on ur cloth yes

[Daskal]:       But not in ur stomach

See Ex. A, DASKAL00621-622.  These and other statements in these messages are relevant and highly probative evidence of the sexual relationship between the defendant and the Victim. Of course, as the defendant concedes, his own statements are as a statement of a party opponent.  See Fed. R. Evid. 801(d)(2)(A)).  Contrary to the defendant's argument, moreover, the Victim's statements within these and other messages with the defendant are also admissible, because they are not offered for their truth, but rather, for their effect on the respective listener, see United States v. Detrich, 865 F.2d 17, 21 (2d Cir. 1988) (third party's statement to DEA officers that he was getting married in August admissible as circumstantial

3

evidence of state of mind of defendant, who claimed he had been duped by acquaintance in India carrying back from India wedding suit for third party without knowing that suit contained heroin); (2) are questions generally not constituting hearsay, see United States v. Dominguez-Gabriel, 511 Fed. App'x 17, 20 (2d Cir. 2013) (questions posed, rather than statements made, by non-testifying government informant were not hearsay, and thus were admissible in drug conspiracy prosecution); or (3) otherwise place the admissible statements in context, see United States v. Paulino, 445 F.3d 211, 216 (2d Cir. 2006) (observing longstanding rule that "[s]o long as . . . statements are not presented for the truth of the matter asserted, but only to establish a context . . . the defendant's Sixth Amendment rights are not transgressed"); United States v. Barone, 913 F.2d 46, 49 (2d Cir. 1990) (upholding admission of tape recording of conversation between defendant and government informant because the jury was instructed that statements made by the informant on the recording were not to be used as evidence, but were only to be used to assist jury in understanding defendant's responses); United States v. Perez, No. 05-CR-441 (PKL), 2005 WL 2709160, at *2 (S.D.N.Y. Oct. 20, 2005) (admitting third-party informant statements in recorded conversations with co-conspirator where government offers statements to place the co-conspirator's own statements in context).

In his motion, the defendant specifically focuses on one message within the WhatsApp communications, sent on February 5, 2018 at approximately 4:49 p.m., in which the Victim tells the defendant, in substance and in part, that she loves him but she does not "want sex anymore," and referring to a time when she and the defendant were in Chicago and she told him the same thing.  See Ex. A at DASKAL000626.  The defendant argues that this message should not be admitted because it "elicited little to no substantive response" from the defendant.  Def. Mot. at 3.  However, after the Victim followed up with the defendant at approximately 7:44 p.m., asking "Hi why r u not responding," the defendant responded almost immediately, at 7:45 p.m., saying, "Call me office."  Id.  This response to the Victim's explicit reference to a sexual relationship between them is probative of the defendant's mental state and consistent with what the Victim will testify about the defendant's efforts to conceal the nature of their relationship, including by telling her to delete messages between them and to call him rather than send written messages.  Indeed, earlier in the same message chain, on January 26, 2018, the defendant wrote to the Victim, in substance, "Don't worry I [heart emoji] u anyways.  I'm just concerned and watching over u.  And please make sure every time we Tex delete.  Right away."  Id. at DASKAL000607-08.

Moreover, the Victim's February 5, 2018 message about not wanting sex anymore is admissible as a prior consistent statement under Federal Rule of Evidence 801(d)(1)(B), because it "is consistent with the declarant's testimony and is offered: (i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground."  Fed. R. Evid. 801(d)(1)(B).  The defendant has made clear that he intends to attack the Victim's credibility and argue that she intended "to accuse Mr. Daskal of the conduct" with which he is charged.  Def. Mot. at 3.  The Victim's prior consistent statements about the sexual nature of her relationship with the defendant are therefore admissible to rebut these charges.

II.       There is No Basis to Preclude the Government from Using the Terms "Victim" or
          "Minor Victim"

          The defendant has also moved to preclude the government from referring to the
Victim as a "victim" or "minor victim," arguing that doing so "inherently conveys to the jury
a conclusion that Jane Doe has suffered due to Mr. Daskal's actions."  Def. Mot. at 6.  This
motion should be denied.

          The government may "prosecute with earnestness and vigor" and "strike hard
blows" at trial, so long as it refrains from "improper methods calculated to produce a wrongful
conviction."  United States v. Young, 470 U.S. 1, 7 (1985) (quoting Berger v. United States,
295 U.S. 78, 88 (1935)).  Accordingly, the government has broad latitude to use its desired
rhetorical devices and terminology as part of its arguments, see, e.g., United States v. Biasucci,
786 F.2d 504, 513 (2d Cir. 1986); United States v. Suarez, 588 F.2d 352, 354 (2d Cir. 1978),
especially when the language is "within the bounds of ordinary advocacy," United States v.
Johnson, 816 F. App'x 604, 610 (2d Cir. 2020) (summary order), and consistent with record
evidence, see United States v. Salameh, 152 F.3d 88, 134-35 (2d Cir. 1998).  "When courts
have ruled to preclude parties from using allegedly inflammatory terms, those terms have
generally been extraneous or irrelevant to the non-moving party's core allegations."  United
States v. Full Play Group, S.A., 15-CR-252 (PKC), Order dated Jan. 4, 2023 (collecting cases)
(holding that the government is permitted to use the terms "victims" and "bribery" at trial).

          The defendant argues that "use of the terms 'victim' and 'minor,' particularly
during closing argument, would invade the province of the jury to determine witness credibility
and constitute impermissible vouching for Jane Doe."  (Def. Mot. at 6).  That is incorrect.
Referencing the word "victim" or "minor victim" in a jury address is not an expression of
counsel's opinion; it is simply part of the government's theory of the case, just like referencing
someone as the "shooter" in a shooting case or the "dealer" in a narcotics case.  See United
States v. Arias Javier, 392 F. App'x 896, 898 (2d Cir. 2010) (summary order) ("The prosecutor
is permitted vigorously to argue for the jury to find its witnesses credible as long as it does not
link its own credibility to that of the witness or imply the existence of extraneous proof
supporting the witness's credibility.").  In addition, "[t]he term 'victim' is not inherently
prejudicial.  It is a term commonly used in the English language that does not by its nature
connote guilt."  United States v. Lussier, No. 18-CR-281 (NEB), 2019 WL 2489906, at *5 (D.
Minn. June 15, 2019).[4]  Moreover, there is absolutely no basis for the defendant to object to
the use of the term "minor." The Victim was underaged at the time the crimes were committed.
That she is a minor is just a fact; not an expression of opinion.

          Indeed, several courts addressing this very issue have denied requests to
preclude use of the term victim or other purportedly "prejudicial terms," concluding that the
government is within its right to use its desired rhetoric to advocate for its view of the evidence
and that such use is not unduly prejudicial.  See, e.g., Full Play Group, S.A., 15-CR-252, Order

---

[4] The same is true with references to "minor victims."

78

5

dated Jan. 4, 2023 (collecting cases) (permitting use of the terms "victims" and "bribery" at trial); United States v. Helbrans, No. 19-CR-497 (S-2) (NSR), 2021 WL 4778525, at *16-17 (S.D.N.Y. Oct. 12, 2021) (denying motion to preclude government's use of terms "kidnapping," "abduction," and "victim" at trial, but precluding the use of the term "cult" as incendiary and irrelevant); United States v. Dupigny, 18-CR-528 (JMF) (S.D.N.Y. Oct. 22, 2019), ECF No. 198 at 49-50 (denying motion to preclude government's use of terms "pimp" and "victim" and noting that precluding use of those terms would be "both unnecessary and impractical"); United States v. Benjamin, 18-CR-874 (JSR) (S.D.N.Y. May 31, 2019), ECF No. 53 at 6-7 (denying motion to preclude government's use of terms "pimp" and "victim"); United States v. Gasperini, No. 16-CR-441 (NGG), 2017 WL 3140366, at *7 (E.D.N.Y. July 21, 2017), aff'd, 729 F. App'x 112 (2d Cir. 2018) (rejecting the defendant's argument to preclude the terms "victim" and "victimized" at trial); United States v. Ahmed, 94 F. Supp. 3d 394, 435-36 (E.D.N.Y. 2015) (denying as "unnecessary and impractical" defendant's motion to preclude government from using terms "terrorist," "terrorist activity," or "terrorism"); see also United States v. Edwards, No. CR 16-103-BLG-SPW-1, 2017 WL 4159365, at *1 (D. Mont. Sept. 19, 2017) (explaining that "use of the term 'victim' is not prejudicial to the defendant's rights when the presentation of evidence taken as a whole clarifies the government's burden of proving all of the elements of the crime" and finding that the "jury will not be unduly prejudiced against [the defendant] if the government refers to certain witnesses as victims"); (citing United States v. Washburn, 444 F.3d 1007, 1013 (8th Cir. 2006) ("[A] number of courts have determined that the use of the term "victim" in jury instructions is not prejudicial to a defendant's rights when, as is the case here, the instructions taken as a whole clarify the government's burden of proving all elements of the crime")); Server v. Mizell, 902 F.2d 611, 615 (7th Cir. 1990) ("No logical argument can be made that the mere use of the term 'victim' [in jury instructions] somehow shifted the burden of proof."). In this case, the defendant has made an extraordinary request not granted in any of these other cases, and the Court should deny the motion.

III.   The Victim's Statements in Text Messages to a Third Party Are Admissible as Prior Consistent Statements

In the government's initial motion in limine filed on June 20, 2023, the government moved the Court to admit certain statements of the Victim, including her statements to a friend in Chicago (the "Chicago Friend") disclosing the sexual nature of her relationship with the defendant, as prior consistent statements under Federal Rule of Evidence 801(d)(1)(B). See ECF No. 99. The government has since obtained screen shots of text messages sent by the Victim to the Chicago Friend in which certain of the Victim's contemporaneous statements are recorded, which are attached hereto as Exhibit B.[5] As set

---

[5] The government provided these screenshots to the defendant on June 22, 2023, the same day that it received them. Notably, the government is informed by Chicago Friend that the screenshots were provided to an associate of the defendant approximately two years ago. In addition, the government respectfully requests permission to file both Exhibit A and Exhibit B under seal, as they contain sensitive statements of the Victim made when she was a minor.

forth below, these statements are also admissible as prior consistent statements under Federal Rule of Evidence 801(d)(1)(B).

In the messages, among other things, the Victim attempts to explain to her friend what she and the defendant have been doing, saying in substance and in part, "m is making, l is love . . . don't know how to spell p.  Pioniese.  Or playing."  The Victim then stops to say, "I feel so bad . . . . u don't understand what I just did . . . . I actually told someone my secret." After a few more messages, the Victim continues her account of her relationship with the defendant, saying in substance, "Breast/nipples.  That's it I can't say anything else . . . this is sooooo hard for me."  When her friend asks about the risk of getting pregnant, the Victim states, "Don't worry.  He doesn't come in me ever.  He puts condom."

At the end of the messages with the Chicago Friend, the Victim claims to have lied to the Chicago Friend about the sexual nature of her relationship with the defendant, saying in substance and in part:

> "I know you think that I'm crazy for lying like that to you and
> I'm sorry.  But I just thought that it's better if you think I'm
> interesting and lied to you than you thinking that I do these things
> if it's not even true.  We r really just close cause I talk to him
> about everything I'm going through . . . but we really don't do
> any of those things . . . ."

The Victim's messages to the Chicago Friend disclosing the sexual nature of her relationship with the defendant are admissible as prior consistent statements because they admissible "to rebut [defense counsel's] charge of inconsistency and to rehabilitate [the declarant's] credibility by placing the alleged discrepancies in context." United States v. Purcell, 967 F.3d 159, 197 (2d Cir. 2020).  This is especially true because the defendant will surely question the Victim about her messages at the end of her conversation with the Chicago Friend where she recanted her account of her sexual relationship with the defendant.

IV.      Conclusion

        For the foregoing reasons, the Court should deny the defendant's motion to preclude evidence of the Victim's statements in messages with the defendant, deny the defendant's motion to preclude the government from using the terms "victim" and "minor victim," and grant the government's motion to admit the Victim's statements in messages with a third party.

                                Respectfully submitted,

                                BREON PEACE
                                United States Attorney

By:       /s/
                                Erin Reid
                                Genny Ngai
                                Assistant U.S. Attorneys
                                (718) 254-7000