

*Ilana Haramati*
*Partner*
Direct (646) 860-3130
Fax (212) 655-3535
ih@msf-law.com

July 12, 2023

**VIA ECF**

Hon. Nicholas G. Garaufis
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Courtroom 4D South
Brooklyn, NY 11201

      Re:    *United States v. Jacob Daskal*, 21-cr-110 (NGG)

Dear Judge Garaufis:

      We represent defendant Jacob Daskal in the above-referenced matter. In accordance with the Court's order, we write in further support of Mr. Daskal's motion *in limine* to exclude as hearsay text messages sent by Jane Doe, or by an unidentified sender to which Mr. Daskal did not respond. Such messages are not adoptive admissions under Federal Rule of Evidence 801(d)(2)(B).

      Federal Rule of Evidence 801(d)(2)(B) provides that "[a] statement that meets the following conditions is not hearsay: . . . (2) *An Opposing Party's Statement*. The statement is offered against an opposing party and . . . (B) is one the party manifested that it adopted or believed to be true." Fed. R. Evid. 801(d)(1)(B). The absence of a text message response by Mr. Daskal does not constitute such an adoptive admission here.

      Jane Doe sent the vast majority of text messages here—although many text messages are unattributed to the sender, where the sender is attributed or suggested by context, it appears that Jane Doe sent the vast majority of messages. At times, Jane Doe sent ten messages or more without any response from Mr. Daskal's phone. And often hours elapsed with no response. For example, the very unattributed message highlighted by the government stating "I don't want sex anymore," is not responded to for approximately three hours, and even then the response is a non-sequitur. *See* Gov. Ltr. 7/12/2023 at 3.[1]

      Unlike in person or telephonic conversations in which responses are generally immediate, delayed responses—or indeed, no responses—are typical in text message conversations. In the context of text messages, hours often go by without a person looking at their phone, or taking the

---

[1] Of course those messages without a sender attributed simply cannot constitute adoptive admissions. Without evidence of who said what and whether Mr. Daskal responded, none can be attributed to Mr. Daskal for purposes of Rule 801.

time to reply.  That reality precludes a finding that Mr. Daskal's failure to respond to text messages constitutes an admission.  *See United States v. Flecha*, 539 F.2d 874, 877 (2d Cir. 1976) ("'Silence is not evidence of an admission, unless there are circumstances which render it more reasonably probable that a man would answer the charge made against him than that he would not."); Fed. R. Evid. 801(d)(2)(B) Adv. Committee N. ("The decision in each case calls for an evaluation in terms of probable human behavior. In civil cases, the results have generally been satisfactory. In criminal cases, however, troublesome questions have been raised by decisions holding that failure to deny is an admission: the inference is a fairly weak one, to begin with. . . ").

*United States v. Thomas*, No. 3:14-CR-00031 RNC, 2015 WL 237337 (D. Conn. Jan. 17, 2015), which the government also cites, addressed precisely this question in the context of text messages.  *Thomas*, for example, excluded text the message "we just arrived in Denver" to which the defendant did not respond, and which was followed by another message from that same declarant "more than an hour after [that] message."  The court in *Thomas* explained:

> I cannot conclude that Thomas adopted this statement through his silence. First, in the medium of text messaging—unlike the medium of face-to-face or telephone conversation—there is no guarantee that the silent "listener" was even aware of the statement. He might simply have neglected to tend to his phone for a time. Second, as discussed above, even if Thomas *did* see the message, silence tends to be more probative if it occurs in the face of a statement tending to incriminate the silent party. The remark about Denver, even if incriminating now, would not have seemed incriminating when it was made. I think it is well within the bounds of normal conversational behavior not to respond to such a remark when sent by text message, even if one disputes its premise.
>
> Neither is this message admissible for the nonhearsay purpose of showing context. In the absence of a response from Thomas, the statement provides no context for understanding one of his own statements.
>
> Nor is the statement admissible to prove that Thomas knew [the sender] to be in Denver. We do not know if he saw the message, so it cannot be taken to bear on his knowledge.

*Id.* at *4–5; *accord id.* at *7 n.4 (excluding another portion of the defendant's text messages with the same declarant as hearsay, explaining that "[i]n this instance, Thomas did not respond to the text until five minutes after he received it. This is a longer lag period than occurred during most of his conversation with [the declarant] and might indicate that he was preoccupied.") (citations omitted).  Precisely the same analysis applies to Jane Does messages to which Mr. Daskal never replied, requiring their exclusion as hearsay.[2]

---

[2] To the extent there are messages to which Mr. Daskal replied only in part, the parts to which he did not reply are similarly excludable as hearsay.  *See Thomas*, No. 3:14-CR-00031 RNC, 2015

Hon. Nicholas G. Garaufis
July 12, 2023
Page 3 of 3

---

Although the government similarly relies on *Thomas* to support the messages' introduction, that analysis is flawed. *Thomas* considered numerous sets of text message excerpts from a declarant in which the defendant responded ambiguously or not at all. *Thomas* determined that only those to which the defendant actually replied could be considered adoptive admissions under Rule 801(d)(2)(B). While the government points to those texts that *Thomas* deemed admissible, they uniformly contained some response from the defendant—such as "Ok," or "send me a pic," in response to the declarant stating "send me a pic of your girl"—those contrast sharply with many of Jane Doe's messages which remained unanswered for hours, or with no answer at all. *See id.* at *2; Gov. Ltr. 7/12/2023 at 2.

Nor can the government seek to admit wholesale the messages exchanged over a period of five months between Jane Doe and Mr. Daskal's device. The Rules of Evidence require a careful parsing to determine that each text message exchange is admissible, and the vast majority are inadmissible here. *See id.* at *2-8 (analyzing admissibility of nine separate excerpts of a text message chain between the defendant and the same declarant to determine, for each excerpt, whether a hearsay exception applied). The Court should exclude Jane Doe's text messages to Mr. Daskal accordingly.

Respectfully submitted,

/s/ IH
Henry E. Mazurek
Ilana Haramati

*Counsel for Defendant Jacob Daskal*

cc:   Counsel of record (*via ECF*)

---

WL 237337, at *7 ("I do not think that Thomas's response can fairly be taken to indicate his assent to the assertion that he paid for [the declarant's] trip. Failure to respond to one part of a two-part remark even in normal conversation can be ambiguous. The listener might be preoccupied and overlook the part to which he does not respond, or he might want to address the other part before turning to the rest of the statement. This possibility is even greater in the medium of text messaging, in which one party to the conversation might do no more than glance at a message.") (citations omitted).